IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:23-CV-443-FL

| | | |
|---|---|---|
| JOHANNA A. HARRIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| VARIETY WHOLESALERS, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the court on defendant's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). (DE 25). The motion has been briefed fully, and the issues raised are ripe for ruling. For the following reasons, the court grants the motion. However, the court also construes plaintiff's opposition to the motion (DE 29) as including a motion to amend, and the court grants in part and denies in part plaintiff's motion, so construed.

## STATEMENT OF THE CASE

Plaintiff commenced this action July 19, 2023, and filed the operative complaint August 29, 2023,[1] asserting claims of hostile work environment and wrongful discharge based on race, sex, and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq. ("Title VII") against defendant, her former employer. Plaintiff seeks compensatory damages and injunctive relief.

---

[1] This matter was transferred to this district from the United States District Court for the Western District of North Carolina on August 8, 2023. Hereinafter, all references to the complaint are to the first amended complaint located at docket entry 7 (DE 7).

The court allowed plaintiff's claims to proceed upon review under 28 U.S.C. § 1915(e),[2] and defendant filed an initial motion to dismiss February 1, 2024. The court stayed scheduling conference activities pending decision on the motion. On its own initiative, April 12, 2024, the court directed the United States Marshals Service to re-serve plaintiff's complaint in its entirety, and the court thus terminated as moot defendant's initial motion to dismiss.

Following re-service of plaintiff's complaint, defendant filed the instant motion. Plaintiff responded in opposition, relying upon an incident/investigation report of the Vance County Sheriff's Office and two handwritten statements. Defendant replied.

## STATEMENT OF THE FACTS

The facts alleged in the complaint may be summarized as follows. Plaintiff allegedly was employed by defendant between August 24, 2022, and December 9, 2022, on which date she was terminated. (DE 7-1 at 3).[3] During the time of plaintiff's employment, plaintiff asserts, she "was being harassed by numerous employees." (DE 7 at 2). After she "reported to human resources," she allegedly started "being harassed and stocked [sic] by these individuals." (Id.). According to the complaint, "[w]hile in the process of being moved due to receiving death threats human resources made racial comment towards [plaintiff] and others." (Id.).

Plaintiff states she was "public humiliated by human resources employee," and "[w]hile reporting a sexual harassment, racial slander [plaintiff] was wrongfully terminated." (Id.). Plaintiff alleges a "relative of this individual stolen [sic] [plaintiff's] personal information and

---

[2]  On that same review, the court dismissed claims against former defendants State Employee Credit Union and United Auto Credit.

[3]  Page numbers to documents in the record are to the page numbers supplied by the court's case management / electronic case filing (CM/ECF) system, rather than the page numbers, if any, showing on the face of the underlying document.

shared with other employees." (Id.). According to the complaint, a supervisor's "niece who works at the bank unauthorized [plaintiff's] banking information." (Id. at 2-3).

Plaintiff alleges that a "Mr. Hosea R [("Hosea")] – loss prevention – latin – male" stated to human resources, a "Mrs. Dylynn," ("Dylynn"), to "let the n*****s kill each other." (DE 7-1 at 4).[4] Plaintiff further alleges that a "Mrs Margie Rooker" ("Rooker"), a "white [female] – team lead/supervisor," stated to a "Ms. Diana 'she thinks she is the definition of a strong black woman but she's not, she's poor, did I show you what my niece sent me of hers?" (Id. at 3-4). Another employee, "Tykyree – latin – male – repairs," allegedly stated "'laquatrio' in latin/spanish [meaning] 'big black p***y." (Id. at 4). Further, "Ms. Kay Edward – white [female] – human resources/mail room" allegedly stated plaintiff "had mail come in from United Auto Credit and on the letter it said her credit score is 200 and something," to which Rooker responded "she is pure poor aint got nothing." (Id.).

Finally, plaintiff asserts that "while reporting a sexual harassment, racial slander [she] was wrongfully terminated." (Compl. (DE 7) at 2).

### COURT'S DISCUSSION

A.  Defendant's Motion

    1.    Standard of Review

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).[5] "Factual allegations must be enough to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). In evaluating

---

[4] The court has replaced internal letters in offensive language alleged in the complaint with asterisks.

[5] Throughout this order, internal quotation marks and citations are omitted unless otherwise specified.

whether a claim is stated, "[the] court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff," but does not consider "legal conclusions, elements of a cause of action, ... bare assertions devoid of further factual enhancement[,] ... unwarranted inferences, unreasonable conclusions, or arguments." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009).

    2.    Analysis

        a.    Hostile Work Environment

"A hostile environment that violates Title VII exists when the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Holloway v. Maryland, 32 F.4th 293, 300 (4th Cir. 2022). "[T]o state a hostile work environment claim, [a plaintiff] must allege that: (1) [s]he experienced unwelcome harassment; (2) the harassment was based on [protected status] or protected activity; (3) the harassment was sufficiently severe or pervasive to alter the conditions of employment and create an abusive atmosphere; and (4) there is some basis for imposing liability on the employer." Id. "While the first element is subjective, the rest of the test is made up of objective components based on a reasonable person standard." Robinson v. Priority Auto. Huntersville, Inc., 70 F.4th 776, 781–82 (4th Cir. 2023).

Concerning the third element, a plaintiff "must clear a high bar in order to satisfy the objective severe or pervasive test." Perkins v. Int'l Paper Co., 936 F.3d 196, 208 (4th Cir. 2019). "The severe or pervasive conduct which gives rise to an abusive work environment must be both objectively and subjectively hostile and abusive." McIver v. Bridgestone Americas, Inc., 42 F.4th 398, 407 (4th Cir. 2022). "Objective analysis of whether a workplace is hostile and abusive looks to all the circumstances, including the frequency of the discriminatory conduct; its severity;

whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Id. "The status of the harasser is also a significant factor to be considered; harassment by a supervisor tends to be more serious, while harassment by a co-equal is less serious." Id. at 408.

Plaintiff has not alleged sufficient facts to permit an inference that "the harassment was sufficiently severe or pervasive to alter the conditions of employment and create an abusive atmosphere[.]" Holloway, 32 F.4th at 300. For example, plaintiff alleges one instance of a racially offensive term stated by Hosea to a human resources employee, Dylynn, and other instances of offensive terms by Tykyree in reference to plaintiff. (Compl. (DE 7-1) at 4). Such alleged "offensive utterance[s]," as opposed to "physically threatening or humiliating" actions, made between employees as opposed to being directed to plaintiff by a supervisor, are not sufficient to meet the test of being objectively "hostile and abusive." McIver v. Bridgestone Americas, Inc., 42 F.4th 398, 407 (4th Cir. 2022).

Other alleged statements made by plaintiff's supervisor, Rooker, to another employee, such as that plaintiff is "poor," (DE 7-1 at 3-4), do not meet the requirement of being "based on . . . protected status" or protected activity. Holloway, 32 F.4th at 300. Similarly, additional allegations by plaintiff that she "was being harassed by numerous employees," "stocked [sic] by these individuals," and "receiving death threats," (compl. (DE 7) at 2), are not based on the requisite protected status or activity. Holloway, 32 F.4th at 300. Nor are these general allegations of threats and harassment by others sufficiently imputable to defendant to state a claim. See id.

In opposition to dismissal of her complaint, plaintiff's relies upon an incident/investigation report of the Vance County Sheriff's Office and two handwritten statements. It is "well-established that parties cannot amend their complaints through briefing or oral advocacy." S. Walk

at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC, 713 F.3d 175, 184 (4th Cir. 2013). Accordingly, a plaintiff cannot "cure pleading deficiencies . . . with later-filed supporting documentation," such as exhibits and declarations. United States ex rel. Nathan v. Takeda Pharms. N. Am., Inc., 707 F.3d 451, 459 n.8 (4th Cir. 2013). Therefore, the court declines to consider plaintiff's additional documentation for purposes of defendant's motion to dismiss. The court addresses further below plaintiff's new allegations, in evaluating whether leave should be granted to file an amended complaint.

In sum, based on the facts alleged in the complaint, plaintiff fails to state a claim for hostile work environment, and defendant's motion in this part is granted.

   b. Wrongful Discharge

"To state a claim for unlawful termination, a Title VII plaintiff must allege facts sufficient to raise a plausible inference that [her] employer discharged [her] because of" her race or sex. Holloway, 32 F.4th at 299. Similarly, to state a claim for wrongful discharge on the basis of retaliation, "the complaint must allege facts supporting a plausible inference that the employer took an adverse employment action against the plaintiff because of the plaintiff's protected activity." Barbour v. Garland, 105 F.4th 579, 590 (4th Cir. 2024). "In the context of a Title VII case, an employment discrimination plaintiff need not plead a prima facie case of discrimination to survive a motion to dismiss." Bing v. Brivo Sys., LLC, 959 F.3d 605, 616 (4th Cir. 2020). "Instead, a Title VII plaintiff is required to allege facts to satisfy the elements of a cause of action created by that statute." Id.

Plaintiff asserts that she was wrongfully terminated on the basis of her race, sex, and retaliation for reporting "sexual harassment, racial slander." (Compl. (DE 7) at 2). However, plaintiff does not allege sufficient facts in her complaint to permit a plausible inference that her

termination was the result of plaintiff's race, sex, or protected activities. Indeed, with respect to sex and race discrimination, the complaint does not allege comparative treatment of others nor statements of supervisors suggesting a motive based upon race. Absent any such allegations, plaintiff has failed to state a plausible claim for race or sex discrimination in her termination. Holloway, 32 F.4th at 299. Likewise, the complaint in its current form lacks sufficient allegations regarding the timing of plaintiff's complaints of harassment and the circumstances surrounding her termination to permit an inference of retaliation. Barbour, 105 F.4th at 593.

Plaintiff's claim for wrongful discharge accordingly must be dismissed, and defendant's motion is granted in this part. The court turns next to consideration of new allegations asserted by plaintiff in her opposition, in evaluating whether leave should be granted to file an amended complaint.

B.      Motion to Amend

Where plaintiff has alleged new factual details in her response and defendant has addressed those allegations in its reply, in view of plaintiff's pro se status, the court construes plaintiff's response as including a motion for leave to amend her complaint. "The court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). However, the court is "free to deny leave to amend as futile if the [proposed pleading] fails to withstand Rule 12(b)(6) scrutiny." In re Triangle Cap. Corp. Sec. Litig., 988 F.3d 743, 750 (4th Cir. 2021). Accordingly, the court proceeds to evaluate plaintiff's claims in light of the new allegations.

1.      Hostile Work Environment and Sex or Race Discrimination

Plaintiffs new allegations do not serve to resurrect plaintiff's hostile work environment and sex or race discrimination claims. In particular, plaintiff sets forth more details regarding the timing of the previously-noted offensive statements made by defendant's employees, (DE 28-2,

28-3), but these details do not alter the court's determination that this conduct is not sufficient to meet the test of being objectively "hostile and abusive." McIver, 42 F.4th at 407. Plaintiff's new suggestion that Hosea was in a supervisory position (see, e.g., DE 28-3 ("I was wrongfully terminated from [defendant] by Mr. Hosea"), does not alter this determination, where the offensive utterance attributed to him was a single instance directed to another human resources employee and not directed to plaintiff. (DE 28-2 at 1).

Similarly, plaintiff does not "allege facts sufficient to raise a plausible inference that [her] employer discharged [her] because of" her race or sex. Holloway, 32 F.4th at 299. Plaintiff still does not allege comparative treatment of others nor statements or actions regarding the termination suggesting a motive based upon plaintiff's race or sex. For example, while plaintiff alleges more details regarding her reports of allegedly harassing conduct on the date of her termination, (e.g., DE 28-3 at 1-2), these are significant only to plaintiff's retaliation claim discussed further below. Plaintiff does not allege facts permitting an inference that her supervisors or decisionmakers discharged her because she was black or female.

Therefore, plaintiff's motion to amend must be denied in that part where plaintiff asserts claims for hostile work environment and race and sex discrimination.

2. Retaliation

By contrast, plaintiff's new allegations are sufficient to state a claim for retaliation. As an initial matter, they permit an inference that plaintiff engaged in "protected activity," at several points in time, including on the date of her termination. Barbour, 105 F.4th at 590. Critically here, protected activity includes not only opposing "employment actions actually unlawful under Title VII but also employment actions an employee reasonably believes to be unlawful." E.E.O.C. v. Navy Federal Credit Union, 424 F.3d 397, 406 (4th Cir. 2005). The Fourth Circuit "has articulated

an expansive view of what constitutes oppositional conduct, recognizing that it encompasses utilizing informal grievance procedures as well as staging informal protests and voicing one's opinions in order to bring attention to an employer's discriminatory activities." DeMasters v. Carilion Clinic, 796 F.3d 409, 417 (4th Cir. 2015). "[A]n employee is protected from retaliation when she opposes a hostile work environment that, although not fully formed, is in progress." Boyer-Liberto v. Fontainebleau Corp., 786 F.3d 264, 282 (4th Cir. 2015) (en banc). That is what plaintiff relies upon here, where she alleges she was "filing a complaint of sexual harassment," and was "reporting the incident" of sexually offensive language, and that she advised Hosea that she "made a report of the[] incident" where he used racially offensive language, all on December 9, 2022. (DE 28-3 at 1-2).

Next, plaintiff alleges "facts supporting a plausible inference that the employer took an adverse employment action against the plaintiff because of the plaintiff's protected activity." Barbour, 105 F.4th at 590. "[A] plaintiff may demonstrate causation by temporal proximity." Id. at 593. Indeed, "the fact that a protected activity is 'very close' in time to an adverse action" itself may give rise to an inference of causation. Id. at 591; see Perkins v. Int'l Paper Co., 936 F.3d 196, 214 (4th Cir. 2019) ("[A] plaintiff may establish causation by showing that (1) the employer either understood or should have understood the employee to be engaged in protected activity and (2) the employer took adverse action against the employee soon after becoming aware of such activity.").

That is also what plaintiff now alleges, specifically that on December 9, 2022, she complained to "Mr. Lee who was [her] supervisor," who "sent [plaintiff] on break after hearing [her] side of the story and talking to" Rooker, who plaintiff describes as "our supervisor." (DE 28-3 at 1). In meeting then with "human resources Mrs. Leslie and Mr. Lee," Hosea also was

present when plaintiff "advised him that [she] made a report of these incident[s]," and "Mrs. Leslie also agreed to my statement and asked [Hosea] to leave." (Id. at 2). Allegedly, moments later, Hosea "refused and replied 'no [Rooker] wants her out and that's what I am going to do." (Id.). Hosea tried to take plaintiff's badge, but "Mrs. Leslie then told [plaintiff] to hand her" the badge, promising an investigation. (Id.). Instead, plaintiff was terminated. Based on these allegations, due to temporal proximity alone, it is plausible to infer plaintiff was terminated in retaliation for her protected activity. Barbour, 105 F.4th at 590.

Defendant suggests that plaintiff has not pleaded a retaliation claim with her new allegations because plaintiff "seems to reference allegations of employee theft at the December 9, 2022, termination meeting." (Def's Reply (DE 29) at 9). Defendant quotes plaintiff's allegations that she said "I have not stolen anything," prior to her termination. (Id. (quoting DE 28-3 at 2)). However, this is insufficient to defeat plaintiff's claim under the Rule 12(b)(6) standard. Indeed, "there . . . is no requirement that the complaint contain facts rebutting any legitimate, nondiscriminatory reason articulated by the employer for its allegedly retaliatory action." Barbour, 105 F.4th at 590. Nor is there any requirement that the plaintiff "identify [the defendant's] proffered reason for her separation," as defendant suggests. (Def's Reply (DE 29) at 10); see Barbour, 105 F.4th at 590. In any event, plaintiff's mere alleged denial of misconduct does not constitute an explanation for termination "so obviously . . . irrefutably sound and unambiguously nondiscriminatory and non-pretextual . . . that it renders the plaintiff's claim of pretext implausible." Id. [6]

Finally, defendant argues that "although [plaintiff] appears to try to attribute some unlawful motive to [Hosea] in her [new allegations], she also appears to acknowledge that [Rooker] (not

---

[6] The court recognizes that defendant did not have benefit of the Fourth Circuit's June 24, 2024, opinion in Barbour at the time of defendant's reply, on June 10, 2024.

[Hosea]) made the decision to terminate her employment." (Def's Reply (DE 29) at 10). However, dismissal on this basis is premature. Plaintiff raises a plausible inference of retaliatory motive for purposes of stating a claim based solely on the very close temporal proximity between her protected activity, which allegedly was communicated also to Rooker, and her termination that same day. (See DE 28-3 at 1); Barbour, 105 F.4th at 591. Therefore, the court leaves for another day consideration of defendant's defense based upon the relevant decisionmaker and any legitimate non-retaliatory reasons for plaintiff's termination.

In sum, plaintiff's motion for leave to amend is granted in that part to allow plaintiff to assert a claim for retaliation. Plaintiff's motion is denied in remaining part where it seeks to assert a claim for hostile work environment and age and sex discrimination. The court thus allows plaintiff leave to file a second amended complaint on the following terms.

C.  Directions for Filing Second Amended Complaint

In light of plaintiff's pro se status, and to ensure plaintiff has set forth her allegations in a manner that will enable defendant meaningfully to make a responsive pleading, the court DIRECTS plaintiff to file her second amended complaint, within 14 days of the date of this order, asserting her claim for retaliation under Title VII. The second amended complaint that the court now gives plaintiff leave to file must contain the caption of this case, be signed and dated by plaintiff, be titled second amended complaint, and contain the factual allegations regarding retaliation that plaintiff filed in opposition to defendant's motion to dismiss, (comprising DE 28-2 and 28-3). See Federal Rule of Civil Procedure 10; Local Civil Rule 10.1 (Forms of Pleadings, Motions, and Documents). In addition, plaintiff must state her allegations "in numbered paragraphs, each limited as far as practicable to a single set of circumstances." Fed. R. Civ. P. 10(b).

Plaintiff is cautioned that failure to file her second amended complaint and future pleadings, motions, and documents substantially in accordance with forms and requirements set forth in the Local Rules and Federal Rules of Civil Procedure may subject plaintiff's action to dismissal for failure to prosecute and failure to follow the court's orders.

## CONCLUSION

Based on the foregoing, defendant's motion to dismiss (DE 25) is GRANTED, and plaintiff's first amended complaint is DISMISSED pursuant to Federal Rule of Civil Procedure 12(b)(6). The court construes plaintiff's opposition to the motion (DE 29) as including a motion to amend, and plaintiff's motion so construed is GRANTED IN PART and DENIED IN PART. Plaintiff is DIRECTED to file a second amended complaint asserting her Title VII retaliation claim, based upon the instructions set forth herein, within 14 days of the date of this order.

SO ORDERED, this the 19th day of July, 2024.

_____
LOUISE W. FLANAGAN
United States District Judge